partment. May 9, 1906.) Action by Edward W. Mulligan against Harvey F. Remington and others. No opinion. Order reversed, with $10 costs and disbursements, and motion granted.

NICHOLS et al., Respondents, v. EAGAN, Appellant. (Supreme Court, Appellate Division, Second Department. May 4, 1906.) Action by James E. Nichols and others against James J. Eagan. No opinion. Judgment of the County Court of Orange county affirmed, with costs.

NUNNALLY v. NEW YORK STAATS ZEITUNG. SAME v. TRIBUNE ASS'N. (Supreme Court, Appellate Division, First Department. April 20, 1906.) Actions by Florence Nunnally against the New York Staats Zeitung and against the Tribune Association. No opinion. Motions granted. Questions settled as stated in orders. Order filed.

In re NUTTING. (Supreme Court, Appellate Division, First Department. May 18, 1906.) In the matter of Thomas B. Nutting. No opinion. Motion denied on payment of $10 costs, with leave to appellant to apply to court below to open default. Order filed.

In re OCEAN ELECTRIC RY. CO. (Supreme Court, Appellate Division, Second Department. May 9, 1906.) In the matter of the application of the Ocean Electric Railway Company for the appointment of three commissioners, etc. No opinion. The issues raised by the answer of the property owners herein properly should be, and indeed must be, determined before the appointment of commissioners. If the defendant insists upon the issue, a referee will be appointed. Therefore the application will be held open until June 4, 1906.

ODELL, Respondent, v. NEW YORK CENT. & H. R. R. CO., Appellant. (Supreme Court, Appellate Division, Second Department. June 8, 1906.) Appeal from Special Term, Dutchess County. Action by Olivia Odell, as administratrix of William H. Odell, against the New York Central & Hudson River Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed. Robert Wilkinson, for appellant. Robert H. Barnett, for respondent.

PER CURIAM. Judgment and order denying motion for new trial affirmed, with costs. Order granting extra allowance reversed, with costs, for want of power in trial court to grant the same.

JENKS, J. (dissenting). The action is for negligence. Between 9 and 10 a. m. of November 28, 1902, the plaintiff's intestate, attempting to pass over a grade crossing of the defendant's railroad tracks in the village of Fishkill, was struck and instantly killed by the locomotive engine of the defendant's passenger train known as the "Empire State Express." The negligence charged by the complaint is that the train "moved and approached its aforesaid express train toward, upon and over the Main street crossing at a high and dangerous rate of speed without giving to the plaintiff's intestate any suitable or sufficient warning or indication, by bell and whistle or otherwise, of its approach to the aforesaid crossing with intent to cross the same, and in failing to provide by rule or otherwise for a suitable and sufficient announcement of the approach of its northbound express trains to the crossing aforesaid." The learned court charged the jury that they had a right to take into consideration (after referring to the location, condition, and use of the crossing), "whether the defendant's servant, the locomotive engineer, was guilty of negligence in not ringing his bell, if he did not ring it, or in not blowing the whistle, if he did not blow it, in approaching such a crossing as that," and continued: "If he did ring the bell or blow the whistle, there was really nothing else that he was called upon to do, and there is no other act of negligence charged. That is one of the vital points of this case." There was no exception or request that touched upon this part of the charge, which thus construed the complaint and thus defined the theory of the plaintiff. I think that the proof of this alleged neglect is not sufficient to support the verdict. A few moments before the accident, the intestate paused on his way towards the tracks to accost two young lads. They were within eight of ten feet of the intestate when he was killed. All of the witnesses who testified as to the signals were called by the plaintiff. I should add, however, that the testimony of the engineer on this subject was elicited on cross-examination. The lad Pearsall testifies: "Up to the time the accident occurred I heard no whistle blown from this train, nor any bell rung." The lad Secor testified: "Up to the time he was killed I did not hear any whistle blown by the train, nor any bell rung." Mr. Vanderberg, who stood at a window in the second story of an adjacent machine shop, after testifying that there were no gates, and that there was no flagman, continued: "There were no bells or signals." But on cross-examination he testifies: "When the Empire State express was approaching there was a whistle down there to the whistling post below the overhead bridge. It was the locomotive whistle. That was before the Empire State express passed the bridge. South of the bridge is where she blowed. I saw the train go through the bridge." When asked on redirect examination whether he wished to be understood as testifying that the whistle proceeded from that particular train, he answered: "I took it for that train. As a matter of fact, when I heard this whistle I could not see this train, and I had not seen it up to the time I heard the whistle." He added that it was not possible, where he stood, to see it, if the whistle had been blown at the whistling post. He also testified that there are railroad yards to the south and in the vicinity where he heard the whistle sound, and that cars were switched and locomotive engines moved in the yards, and that it was a common thing to hear whistles from that direction. He testifies that he did not hear the engine in question blow the whistle from the time it reached the bridge, or hear it ring any bell. He then testified on recross that as the train went under the bridge steam